**Avery PACK, Plaintiff,**

v.

**DAMON CORPORATION, an Indiana corporation, and General RV Center, a Michigan corporation, Defendants.**

No. 03–CV–73601.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 19, 2004.

Karl P. Heil, Mark P. Romano, Steven S. Toth, Consumer Legal Services, Garden City, MI, for Plaintiff.

Jeffrey R. Jowicki, Michael D. Dolenga, Bingham Farms, MI, for Defendants.

***ORDER GRANTING DEFENDANT GENERAL RV CENTER'S MOTION TO COMPEL ARBITRATION; DENYING DEFENDANT DAMON CORPORATION'S MOTION TO COMPEL ARBITRATION; DENYING DEFENDANT GENERAL RV CENTER'S MOTION FOR SUMMARY JUDGMENT AS MOOT, AND; GRANTING, IN PART, DEFENDANT DAMON CORPORATION'S MOTION FOR SUMMARY JUDGMENT***

STEEH, District Judge.

Defendants Damon Corporation ("Damon") and General RV Center ("GRVC") move to compel arbitration of plaintiff Avery Pack's claims of breach of express and implied warranties, revocation of acceptance, breach of express and implied warranties as actionable under the federal Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, violations of Michigan's Consumer Protection Act ("MCPA"), M.C.L. §§ 445.901 *et seq.*, breach of contract, and rescission. In the alternative, defendants also move for summary judgment of plaintiff's claims. A hearing on the motions was held on November 20, 2003. For the reasons set forth below, defendant GRVC's motion to compel arbitration will be GRANTED, defendant Damon's motion to compel arbitration will be DENIED, defendant GRVC's motion for summary judgment will be DENIED as MOOT, and defendant Damon's motion for summary judgment will be GRANTED, IN PART, as to plaintiff's state and MMWA claims of breach implied warranties, revocation of acceptance,

breach of contract, and rescission as alleged against Damon ONLY in Counts II, III, V, VII, and VIII. The remainder of Damon's motion for summary judgment will be DENIED as to plaintiff's state and MMWA claims of breach of an express warranty, and violations of the MCPA as alleged against Damon ONLY in Counts I, IV and VI.

## I. Background

Plaintiff Avery Pack filed an eight count complaint in Michigan's Wayne County Circuit Court on August 19, 2003 alleging that he purchased a new 2002 motor home from defendant GRVC on September 13, 2002, and that defendant Damon manufactured the vehicle. Plaintiff alleges he received express and implied warranties from both GRVC and Damon as part of the sale. Plaintiff alleges that the motor home has since been out of service for 168 days for nine needed structural and suspension repairs[1] performed by Damon's authorized service agents, including GRVC. Plaintiff alleges breach of express warranties arising under M.C.L. 440.2313 (Count I), breach of implied warranties of merchantability arising under M.C.L. § 440.2104 (Count II), revocation of acceptance pursuant to M.C.L. § 440.2608 (Count III); breach of express warranty actionable under 15 U.S.C. § 2310(d)(1) and (2) of the MMWA (Count IV); breach of implied warranty actionable under 15 U.S.C. §§ 2301(7), 2308, and 2310(d)(1) and (2) of the MMWA (Count V): violations of the MCPA (Count VI); breach of contract (Count VII); and rescission (Count VIII).

Defendants removed the action to federal court on September 19, 2003 based on federal question jurisdiction, 28 U.S.C. § 1331, arising from plaintiff's federal MMWA claims. On September 24, 2003,

defendants filed a motion for summary judgment to enforce arbitration, and a separate motion for summary judgment going to the merits of plaintiff's claims. Plaintiff filed response briefs on October 14, 2003. Defendants filed subsequent reply briefs, and a hearing on the motions was held on November 20, 2003. On January 13, 2004, the court granted defendants' motion to file a supplemental brief. In turn, on January 21, 2004, the court granted plaintiff's motion to file a response to defendant's supplemental brief. The court denied defendants' motion to file a second supplemental brief on January 28, 2004.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander,* 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Re-*

---

1. Plaintiff specifically alleges service dates of: September 13, 2002; September 23, 2002; October 9, 2002; October 14, 2002; November 20, 2002; January 10, 2003; April 9, 2003; and April 28, 2003.

*sources Corp.,* 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). Proffered evidence and all reasonable inferences arising therefrom must be construed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'r,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Co., Inc.,* 952 F.2d 942, 945 (6th Cir.1992). If the movant establishes by use of the materials specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). The nonmoving party cannot rest on its pleadings to avoid summary judgment, but must support its claims with probative evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 774 (6th Cir.1996); *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.1993).

### III. Proffered Documents

Plaintiff and GRVC signed a written sales agreement on September 6, 2002 stating a list price of $103,228.32 for the subject 2002 motor home, and a sale price of $85,100.00. Defendants' September 24, 2003 SJ[2] Exhibit 6; Arb Exhibit 1. Above plaintiff's signature, the agreement reads "I HAVE READ THE TERMS ON THE BACK AND HAVE RECEIVED A COMPLETED COPY OF THIS AGREE-MENT (SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS)." *Id.* The back of the September 6, 2002 document states in part:

*ADDITIONAL TERMS AND CONDITIONS*

1. *DEFINITIONS*

As used in this agreement, the terms (A) "Dealer" shall mean the person or company to whom this agreement is addressed and who shall become a party to this agreement by its acceptance. (B) "Purchaser" shall mean the party initiating this agreement as stated on the face of the agreement. (C) "Manufacturer" shall mean the corporation that manufactured the vehicle or chassis, it being understood by the Purchaser and Dealer that the Dealer is in no respect the agent of the Manufacturer. That the Dealer and the Purchaser are the sole parties to this agreement and that reference to the Manufacturer is for the purpose of explaining generally certain contractual relationships existing between the Dealer and the Manufacturer.

2. *ARBITRATION CLAUSE*

**ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE BREACH OF THIS AGREEMENT, THE SUBJECT OF THIS AGREEMENT, AND/OR THE RECREATIONAL VEHICLE SOLD PURSUANT TO THIS AGREEMENT, SHALL BE RESOLVED BY ARBITRATION ADMINISTERED BY THE OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION LOCATED IN OAKLAND COUNTY, MICHIGAN, IN ACCORDANCE WITH ITS THEN CURRENT ARBITRATION RULES.**

---

**2.** Defendants attach Exhibits 1–10 to their September 24, 2003 Motion for Summary Judgment, and Exhibits 1–5 to their September 24, 2003 Motion for Summary Judgment to Enforce Arbitration Clause. The court refers to the former as "SJ Exhibit," and to the latter as "Arb Exhibit."

ARBITRATION SHALL BE THE EXCLUSIVE REMEDY OF THE PARTIES. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATION MAY BE ENTERED IN ANY COURT HAVING JURISDICTION.

\* \* \* \* \* \*

12. *FACTORY WARRANTY*

Unless a separate written document containing the terms of a Dealer warranty is furnished by the Dealer to the Purchaser, any warranty on any new vehicle, motor home or recreational vehicle is provided only by the Manufacturer thereof. THE DEALER HEREBY DISCLAIMS, ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

13. *USED VEHICLE—WHETHER OR NOT SUBJECT TO MANUFACTURER'S WARRANTY*

Unless a separate written document containing the terms of a Dealer warranty is furnished by the Dealer to the Purchaser, any used vehicle, motor home or recreational vehicle is sold "AS IS" WITHOUT ANY WARRANTY. THE DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

*Id.*

On September 13, 2002, plaintiff, as "Buyer," and GRVC, as "Seller," signed a "RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT, AND DIS-CLOSURE STATEMENT" evidencing a total sales price of $226,435.60, to be paid at a monthly rate of $892.44 over 240 months. Plaintiff's Arb Exhibit A; SJ Exhibit A.[3] On January 10, 2003, plaintiff applied for a seven-year/75,000 mile service contract with "Interstate Star RV." Defendants' September 24, 2003 SJ Exhibit 5. The service contract was signed by a representative of defendant GRVC. *Id.*

Defendant Damon's written warranty reads in part:

**LIMITED WARRANTY**

Damon Corporation ("Damon") warrants that this recreational vehicle ("RV" or "Vehicle"), when used for its intended purpose of recreational travel and camping, will be free from defects in material and workmanship attributable to Damon for a period of one (1) year or 12,000 miles . . . . .

In the event a defect in materials or workmanship is found to exist, Damon will provide for the repair or replacement of such defective material(s) or workmanship at no charge in accordance with the terms, conditions and limitations of this Limited Warranty, provided that the RV owner complies with the following requirements:

(a) notifies Damon or one of its authorized, independent dealers of the claimed defect within fifteen (15) days of the date that the claimed defect is or should have been discovered; and

(b) promptly returns the RV to Damon or an authorized dealer for such repairs. All costs incurred in transporting this RV for warranty service shall be the responsibility of the RV owner unless otherwise approved in advance by Damon.

**3.** Plaintiff attaches Exhibits A–D to their October 4, 2003 Brief in Opposition to Defendants' Motion for Summary Judgment to Enforce the Arbitration Clause, and Exhibits A–C to their October 4, 2003 Brief in Opposition to Defendants' Motion for Summary Judgment. The court refers to the former as "Arb Exhibit," and to the latter as "SJ Exhibit."

Damon's obligation to repair or replace defective materials is the sole obligation of Damon under this Limited Warranty. Damon specifically makes no warranty as to the future performance [sic] this RV or any of its materials, components, or parts.....

\* \* \* \* \* \*

*LIMITATION AND DISCLAIMER OF IMPLIED WARRANTIES*

DAMON EXPRESSLY LIMITS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND OTHER IMPLIED WARRANTIES APPLICABLE TO THIS RV TO THE DURATION OF DAMON'S EXPRESS LIMITED WARRANTY (ONE (1) YEAR OR TWELVE THOUSAND (12,000) MILES []]. BEGINNING ON THE FIRST DATE THAT EITHER THE RV IS TENDERED TO THE FIRST RETAIL PURCHASER, OR THE DATE THAT THE RV IS FIRST PLACED IN SERVICE BY THE DEALER FOR PERSONAL USE PRIOR TO SALE AT RETAIL. PERFORMANCE OF REPAIRS OR NEEDED ADJUSTMENTS IS THE EXCLUSIVE REMEDY UNDER THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY. DAMON SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST WAGES, PAYMENTS ON ANY INSTALLMENT RETAIL LOAN, OR VEHICLE RENTAL EXPENSES) RESULTING FROM BREACH OF THIS WRITTEN LIMITED WARRANTY OR ANY IMPLIED WARRANTY.

Defendants' September 24, 2003 SJ Exhibit 4.

## IV. Arbitration

### A. Defendant Damon

Only the September 6, 2002 written agreement executed by plaintiff and GRVC contains an arbitration clause. Damon nonetheless argues it is also entitled to compel arbitration of plaintiff's claims as a third-party beneficiary to the September 6, 2002 agreement. Damon also relies on a strong federal policy favoring arbitration.

9 U.S.C. § 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

State law generally governs the validity, revocability, and enforceability of an arbitration contract, with the exception that courts may not invalidate an arbitration contract under state laws applicable only to arbitration provisions. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) and *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Under Michigan law, an arbitration provision is unenforceable if it is not a binding contract like any other contract. *See Heurtebise v. Reliable Business Computers*, 452 Mich. 405, 413, 550 N.W.2d 243 (1996); *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich.App.

118, 125, 596 N.W.2d 208 (1999) (finding "contracts providing for compulsory arbitration must, of course, meet the general rules regarding the validity of contracts.").

■ Third-party beneficiary status in Michigan is provided for by statute:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

M.C.L. § 600.1404(1). An objective standard is used to determine third-party beneficiary status, and "[t]he contract itself reveals the party's intentions." *Krass v. Tri–County Security, Inc.*, 233 Mich.App. 661, 666, 593 N.W.2d 578 (1999) (quoting *Rhodes v. United Jewish Charities of Detroit*, 184 Mich.App. 740, 744, 459 N.W.2d 44 (1990)).

■ The September 6, 2002 contract executed by plaintiff and GRVC expressly provides that "the Dealer [GRVC] is in no respect the agent of the Manufacturer [Damon]," that plaintiff and GRVC "are *the sole parties* to this agreement and that reference to the Manufacturer [Damon] is for the purpose of explaining generally certain contractual relationships existing between the Dealer [GRVC] and the Manufacturer [Damon]." Defendants' September 24, 2003 SJ Exhibit 6; Arb Exhibit 1 (emphasis added). The contract goes on to explain that "ARBITRATION SHALL BE THE EXCLUSIVE REMEDY *OF THE PARTIES*." *Id.* (emphasis added). The September 6, 2002 contract language itself objectively demonstrates that GRVC did not undertake to acquire contractual arbitration directly for the benefit of Da-

mon. *Krass*, 233 Mich.App. at 666, 593 N.W.2d 578; M.C.L. § 600.1404(1). In that Damon is neither a party or third-party beneficiary to the September 6, 2002 agreement, the arbitration provision therein is not contractually binding as between Damon and plaintiff. *Id, Heurtebise*, 452 Mich. at 413, 550 N.W.2d 243; *Rembert*, 235 Mich.App. at 125, 596 N.W.2d 208.

*Abela v. General Motors Corp.*, 257 Mich.App. 513, 669 N.W.2d 271 (2003) does not warrant a different conclusion. The Michigan Court of Appeals in *Abela* held that Michigan's Lemon Law could not invalidate an agreement to arbitrate a state Lemon Law claim because the FAA preempts state law that specifically invalidates arbitration agreements. *Id.* at 524–525, 669 N.W.2d 271. Here, the issue is not the invalidation of an arbitration agreement between plaintiff and Damon, but the absence of any such contract between plaintiff and Damon. Damon's argument to compel contractual arbitration under the FAA and broad policy favoring arbitration is thus without merit. *Doctor's Associates, Inc.*, 517 U.S. at 687, 116 S.Ct. 1652. Damon's motion to compel plaintiff to arbitrate his claims as alleged against Damon will be denied. *Winningham*, 42 F.3d at 984.

### B. Defendant GRVC

Conversely, GRVC is a party to the September 6, 2002 agreement, an agreement which provides that arbitration is the exclusive remedy, and that: ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE BREACH OF THIS AGREEMENT, THE SUBJECT OF THIS AGREEMENT, AND/OR THE RECREATIONAL VEHICLE SOLD PURSUANT TO THIS AGREEMENT, SHALL BE RESOLVED BY ARBITRATION ...." Defendants' September 24, 2003 SJ Exhibit 6; Arb Exhibit 1. Plaintiff

argues the arbitration clause is unenforceable, however, because: (1) GRVC waived arbitration by filing a concurrent motion for summary judgment and seeking discovery of plaintiff's insurance records; (2) Michigan's Motor Vehicle Installment Sales Contracts Act ("MVISCA"), M.C.L. §§ 566.301 *et seq.*, and Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. §§ 492.101 *et seq.*, required the arbitration clause to be set forth in the retail installment contract; (3) the clause is not disclosed in the warranty, violating the "one document rule," (4) the clause is unconscionable; (5) the clause fails to provide certain disclosures required by the American Arbitration Association ("AAA") and its Principle 11 Consumer Due Process Protocol, and; (6) the MMWA and the Federal Trade Commission ("FTC") require informal dispute settlement procedures to be non-binding.

### i. Waiver

■■ Under Michigan law, "[a] party may waive any of its contractual rights, including the right to arbitrate. A waiver may be express or it may be implied when a party actively participates in a litigation or acts in a manner inconsistent with its right to proceed to arbitration." *Joba Construction Co., Inc. v. Monroe County Drain Commissioner,* 150 Mich.App. 173, 178–179, 388 N.W.2d 251 (1986) (citing *Bielski v. Wolverine Ins. Co.,* 379 Mich. 280, 150 N.W.2d 788 (1967) and *Capital Mortgage Corp. v. Coopers & Lybrand,* 142 Mich.App. 531, 369 N.W.2d 922 (1985)).

■ The court is not persuaded that defendant GRVC waived a contractual right to arbitration by moving for summary judgment at the same time it moved to compel arbitration, or by seeking plaintiff's insurance records. Following removal of this lawsuit from Michigan's Wayne County Circuit Court on September 19, 2003, defendants moved five days later, on September 24, 2003, to compel arbitration. The court views the concurrent September 24, 2003 motion for summary judgment on the merits as a motion for alternative relief in the event this matter is not ordered to arbitration. Defendants' request for plaintiff's insurance records is not so substantial as to reflect the intentional relinquishment of a contractual right to arbitration. *See Maxey v. Proctor,* 343 Mich. 453, 457, 72 N.W.2d 198 (1955). The situation here is unlike that in *Joba* where, after requesting arbitration, the *Joba* plaintiff filed a lawsuit seeking some of the same relief it sought in arbitration, failed to raise arbitration as a defense to counterclaims, and pursued discovery in the form of interrogatories. *Joba,* 150 Mich.App. at 179, 388 N.W.2d 251. The circumstances found to constitute a waiver of arbitration in *Rugumbwa v. Betten Motor Sales,* 136 F.Supp.2d 729 (2001) are also dissimilar, where the defendant failed to raise arbitration in its initial answer or a joint status report filed a month later, failed to seek a stay of proceedings upon adding arbitration as an affirmative defense, and moved to add third-party plaintiffs to the lawsuit, all before moving to compel arbitration, and thereafter moved for summary judgment and engaged in "substantial discovery." *Id.,* at 734. GRVC did not waive contractual arbitration.

### ii The MVISCA, MVSFA and the MMWA "one document rule"

■ In *Rugumbwa,* the federal district court held that an arbitration clause set forth in two separate sales contracts for a Toyota Camry automobile were unenforceable by operation of M.C.L. § 566.302 [4] of

---

**4.** "Every retail installment sale of a motor vehicle shall be evidenced by an instrument in writing signed by the retail buyer and a copy thereof shall be delivered to him by the retail seller at the time of its execution. An acknowledgment of the delivery thereof con-

the MVISCA, and M.C.L. § 492.112(a) [5] of the MVSFA.

> While the arbitration clause purports to apply to the parties' retail installment contract "if any," the court rejects defendant's assertion that the clause in the sales order should be read in conjunction with the installment contract. The clear language of the MVISCA and the MVSFA envision the execution of a single, comprehensive installment contract containing all of the agreements made by the parties with regard to the subject matter of the retail installment sale. The installment contract here does not include the arbitration clause. Accordingly, the court finds that the arbitration clause contained in the sales orders does not apply to the sale of the Camry.

*Rugumbwa*, 136 F.Supp.2d at 733. The *Rugumbwa* plaintiff alleged that the defendant dealership made false representations to consumers regarding the cost of vehicle service contracts and secretly retained a substantial portion of the fees in violation of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 160 *et seq.*, the MCPA, the MVISCA, and the MVSFA. *Id.* at 731. The *Rugumbwa* court relied upon *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D.Mich.2000) as holding that "an addendum to a vehicle retail sales installment contract is not enforceable as a matter of law because the MVISCA and the MVSFA require all of the agreement between the parties to be included in a single installment sales contract." *Rugumbwa*, 136 F.Supp.2d at 733 (citing *Lozada*, 197 F.R.D. at 339). The *Lozada* plaintiffs alleged that a dealership failed to provide a copy of their retail sales contracts at the time of execution, in violation of the TILA, MCPA, MVISCA and MVSFA. *Lozada*, 197 F.R.D. at 321. Plaintiff Pack argues that, pursuant to *Rugumbwa* and *Lozada*, the arbitration clause in the September 6, 2002 purchase agreement is unenforceable because the clause is not also contained within the September 13, 2002 retail installment contract. *See* Plaintiff's Arb Exhibit A; SJ Exhibit A. The court disagrees.

*Rugumbwa* and *Lozada* stand for the more narrow proposition that claims alleged with regard to the subject matter of a retail installment contract are subject only to those agreements expressly set forth in the installment contract. Unlike the *Rugumbwa* and *Lozada* plaintiffs, plaintiff Pack is not challenging the terms of his retail installment contract, but GRVC's warranties and performance under the terms of the September 6, 2002 sales agreement. GRVC does not seek arbitration of claims arising under the September 13, 2002 retail installment agreement; plaintiff does not allege claims regarding the subject matter of the retail installment contract. The *Rugumbwa* court itself distinguished between claims with regard

---

tained in the body of the instrument shall be conclusive proof of delivery in any action to enforce any obligation arising out of the retail installment sale brought by any successor in interest to the rights of the retail seller. The written instrument shall contain all of the agreements of the parties made with reference to the subject matter of the retail installment sale . . . .

 \* \* \* \* \* \*

Under a written instrument evidencing a retail installment sale which does not substantially comply with the requirements of this section, the seller shall not be entitled to recover, collect or retain that part of the obligation which represents the finance charge and the buyer shall not be liable therefor."

5. "An installment sale contract shall be in writing, and shall contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold, and shall be signed by both the buyer and the seller."

to a retail installment contract, and claims with regard to a sales contract:

> Neither party has relied upon the Uniform Commercial Code (UCC) to support their positions. While the UCC governs the sale of goods, its provisions do not govern the means by which automobile ownership is transferred, except to the extent that the Michigan Vehicle Code contains no applicable law. *See Whitcraft v. Wolfe,* 148 Mich.App. 40, 50, 384 N.W.2d 400 (1985). Similarly, the terms of the MVISCA governs installment sales of motor vehicles. *See, e.g., Roe v. Flamegas Industrial Corporation,* 16 Mich.App. 210, 212–213, 167 N.W.2d 835 (1969) (violation of the MVISCA's requirement that every retail installment sale of a motor vehicle shall be in writing voids the transfer of the motor vehicle even though the contract is not invalid under the UCC's statute of frauds).

*Rugumbwa,* 136 F.Supp.2d at 733 n. 1. *Rugumbwa* and *Lozada* did not hold that an agreement to arbitrate UCC breach of warranty claims relative to the sale of a motor vehicle must also be set forth in a retail installment agreement.

■ Indeed, such a state law requirement would violate the "one document rule" articulated in *Cunningham v. Fleetwood Homes of Georgia, Inc.,* 253 F.3d 611 (11th Cir.2001) and advocated by plaintiff, "requiring warrantors to present all information relevant to the warranty in one place, where it might be easily located and assimilated by the consumer." *Id.* at 621 (citing 40 Fed.Reg. 60,172 (Dec. 31, 1975)). The *Cunningham* court held that a mobile home manufacturer could not invoke third-party beneficiary status to compel arbitra-

tion under the terms of the seller dealership's written sales agreement because the manufacturer's warranty did not contain the arbitration provision. *Id.* at 622.

> Compelling arbitration on the basis of an arbitration agreement that is not referenced in the warranty presents an inherent conflict with the [MMWA's] purpose of providing clear and concise warranties to consumers.

*Id.* Here, the September 6, 2002 sales agreement executed by plaintiff and GRVC contains both GRVC's warranties and an arbitration clause, in compliance with the "one document rule" as applied to defendant GRVC.[6]

■ Plaintiff's interpretation of *Rugumbwa* and *Lozada* would create a "two document rule" limited to motor vehicles sold in Michigan under retail installment agreements. Such a result under state law is preempted by the FAA. *Doctor's Associates, Inc.,* 517 U.S. at 687, 116 S.Ct. 1652 (finding Montana statute making arbitration contracts unenforceable unless notice of arbitration is "typed in underlined capital letters on the first page of the contract" was preempted by the FAA). A panel of the Michigan Court of Appeals recently arrived at essentially the same result. *See LeGere v. New Millennium Homes, Inc.,* No. 242473, 2003 WL 23018774, at *3 (Mich.App. Dec. 23, 2003) (citing *Abela,* 257 Mich.App. at 525, 525 n. 7, 669 N.W.2d 271, and holding that, to the extent the MCPA, the Michigan Retail Installment Sales Act, M.C.L. § 445.864(1)(d) and (f) and M.C.L. § 445.866, and the Michigan Mobile Home Warranty Act, M.C.L. § 125.995, can be read to prohibit a binding arbitration agreement, they are

---

6. Of course, defendant Damon's manufacturer's warranty does not comply with the "one document rule" because the written warranty does not contain or refer to an arbitration provision. The court has already determined that Damon is not a third-party beneficiary to the GRVC/plaintiff sales contract, and therefore cannot compel arbitration under the sales contract's terms.

preempted by the FAA). GRVC is not precluded from enforcing the arbitration clause by operation of the MVISCA, the MVSFA, or a "one document rule."

### iii. Unconscionability

Plaintiff argues the arbitration clause is unconscionable in that it was not negotiated, and was presented on the back of a pre-printed form in boilerplate fashion. Plaintiff asserts that his only options were to adhere to the sales contract or reject it. Plaintiff also argues that arbitration will unfairly deprive him of judicial process and his right to a jury trial, that he will incur greater costs in initiating arbitration at roughly $4,000.00 as opposed to nominal court filing fees, and that he will be required to pay one-half of the arbitrator's costs and fees.

 In Michigan, a party seeking to invalidate a contract provision based on unconscionability must show both procedural and substantive unconscionability. *The Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 322 (6th Cir.1998) (citing *Rehmann Robson & Co. v. McMahan*, 187 Mich.App. 36, 466 N.W.2d 325, 329 (1969)). The most important factors in deciding procedural unconscionability are: (1) whether the economically weaker party had an alternative source with which it could contract, and; (2) whether the contract term was in fact negotiated. *Id.* at 324. Substantive unconscionability asks whether the term is substantively reasonable. *Id.* at 322. "Reasonableness is the primary consideration in determining whether a contract clause is enforceable." *Rehmann Robson & Co.*, 187 Mich.App. at 44, 466 N.W.2d 325.

 Plaintiff has failed to come forward with evidence that would support a finding of either procedural or substantive unconscionability. Plaintiff has not shown that GRVC was his only source for buying a new motor home, or that other potential sources required submitting disputes to arbitration. Use of boilerplate language on the back of a form is not of itself procedurally unreasonable, and particularly in light of the language above plaintiff's signature: "I HAVE READ THE TERMS ON THE BACK AND HAVE RECEIVED A COMPLETED COPY OF THIS AGREEMENT (SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS)." Defendants' September 24, 2003 SJ Exhibit 6; Arb Exhibit 1. *Id.* at 323–324, 326–327. Plaintiff does not asset that he attempted to negotiate the arbitration provision, and was refused. *Id.* at 325 (stating that court would be more "sympathetic" to a claim of procedural due process if the party had in fact attempted to negotiate the arbitration provisions). Substantively, the court is not persuaded that arbitration is an unreasonably costly alternative to litigation in federal court. Arbitration is favored by Michigan and federal public policy as an acceptable form of dispute resolution notwithstanding the absence of a jury trial. *Heurtebise v. Reliable Business Computers, Inc.*, 452 Mich. 405, 411, 550 N.W.2d 243 (1996) (citing *Detroit v. AW Kutsche & Co.*, 309 Mich. 700, 16 N.W.2d 128 (1944) for the proposition that "arbitration has long been a favorable method of dispute resolution"); *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (stating that "[the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements"). Plaintiff has not come forward with evidence demonstrating that the potential costs of arbitration here are great enough to deter plaintiff or similarly situated individuals from seeking to vindicate their rights in an arbitral forum. *See Morrison v. Circuit City Stores*, 317 F.3d 646, 663 (6th Cir.2003). The arbitration clause is not unconscionable.

### iv. AAA Disclosures

Plaintiff argues that the arbitration clause is invalid because it does not comply with the AAA's Principle 11 Consumer Due Process Protocol which states consumers should be given clear and adequate notice of arbitration and its consequences, resources and information on arbitration as distinguished from litigation, and information about the substantial costs of arbitration. Plaintiff asserts that, as a result, the AAA may refuse to arbitrate his claim.

Plaintiff's argument is at best conclusionary. Plaintiff has not come forward with evidence that the AAA has in fact refused to arbitrate his claims. Neither has plaintiff come forward with legal authority to support his position that a contractual arbitration agreement is unenforceable or invalid if it does not set forth the notice provisions that consumers "should" be given. *See* Plaintiff's October 14, 2003 Arb. Exhibit C. The arbitration clause is not unenforceable by operation of AAA's Principle 11 Consumer Due Process Protocol.

### v. MMWA and FTC

The Fifth and Eleventh Circuits have held that the MMWA does not preclude arbitration of MMWA claims. *Walton v. Rose Mobile Homes L.L.C.*, (5th Cir.2002); *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002). The Sixth Circuit has yet to address the issue. A federal district court in the Northern District of Ohio recently adopted the dissenting opinion in *Walton*, holding that the MMWA precludes enforcement of binding arbitration for claims of breach of a written warranty, deferring to the FTC's expertise and promulgation of 16 C.F.R. § 703.5(j), which provides that: "Decisions of the Mechanism [of informal dispute settlement procedure under the MMWA] shall not be legally binding on any person." *See Rickard v. Teynor's Homes, Inc.*, 279 F.Supp.2d 910 (N.D.Ohio 2003). The *Rickard* court limited MMWA arbitration preclusion to only claims of breach of written warranties, relying in part on 15 U.S.C. § 2310(a)(2): "The [FTC] shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies."

In *Davis*, the Eleventh Circuit reasoned that "[i]n every statutory right case that the Supreme Court has considered, it has upheld binding arbitration *if* the statute creating the right did not *explicitly* preclude arbitration." *Davis*, 305 F.3d at 1273 (emphasis in original) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (ADEA claims); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484–486, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act of 1933 claims); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238, 242, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (Securities and Exchange Act of 1934 and RICO claims); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628–640, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Antitrust Act claims)). The *Davis* court applied a three factor test articulated in *McMahon*, 482 U.S. at 222, 107 S.Ct. 2332, in determining whether Congress intended to preclude binding arbitration of MMWA claims: (1) the text of the MMWA; (2) the MMWA's legislative history; and; (3) whether there is an inherent conflict between arbitration and the underlying purpose of the MMWA. *Id.* at 1273. In examining the text of 15 U.S.C. § 2310(a) and its informal dispute procedures, the *Davis* court reasoned that the availability of non-binding informal dispute procedures does not equate to explicit Congressional intent to preclude enforce-

ment of an otherwise binding FAA arbitration agreement. *Id.* at 1275. As to the second test, *Davis* found the MMWA's ambiguous legislative history regarding binding arbitration was outweighed by the FAA's strong underlying policy favoring arbitration. *Id.* at 1276. In applying the third test, the *Davis* court found that the MMWA's purposes of improving the adequacy of information available to consumers, preventing deception, and improving competition in the marketing of consumer products are not in conflict with the FAA and its policy favoring arbitration. *Id.* at 1276 (citing 15 U.S.C. § 2302(a) of the MMWA, and *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("Congress, when enacting [the FAA], had the needs of consumers ... in mind.")). The *Davis* court also determined that the FTC's interpretation of the MMWA as precluding arbitration was unreasonable because it was based on grounds that do not support such an interpretation: Congress' grant of concurrent state and federal jurisdiction over MMWA claims, and reliance on a now disfavored hostility towards arbitration as inadequate to protect the rights of individual consumers. *Id.* at 1279–1280 (citing *McMahon,* 482 U.S. at 234 n. 3, 107 S.Ct. 2332 as rejecting a similar argument advanced by the FTC in opposing binding arbitration in Securities and Exchange Act of 1934 cases under the reasoning of *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). The Fifth Circuit in *Walton* followed a similar approach, determining that Congress expressed a clear preference for arbitrating contractual claims in enacting the FAA, and that the MMWA's text, purpose, and legislative history do not reflect a contrary intent as to MMWA claims. *Walton,* 298 F.3d at 475–478. The *Walton* court distinguished between the MMWA's pre-suit "informal procedures" and binding arbitration as a lawsuit "substitute" for a judicial forum. *Id.*

at 475 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."))

This court finds *Davis* and *Walton* to be the more persuasive authority. The court does not read 15 U.S.C. § 2310(a)(2) as an expression of Congressional intent to bar arbitration of MMWA claims or, as held by *Rickard,* 2003 WL 22060320, to bar arbitration of only MMWA breach of express warranty claims. The court adopts the reasoning of *Davis* and *Walton* as set forth herein, and concludes that the MMWA does not preclude enforcement of plaintiff's and GRVC's arbitration agreement.

Defendant GRVC's motion to compel plaintiff to arbitrate his claims as alleged against GRVC will be granted. *Winningham,* 42 F.3d at 984.

### V. Summary Judgment on the Merits as alleged against Damon Only

Having determined that plaintiff must arbitrate his claims as alleged against defendant GRVC, the court proceeds to adjudicate only defendant Damon's motion for summary judgment on the merits of plaintiff's claims. Plaintiff alleges breach of express warranty, breach of express warranty as actionable under the MMWA, breach of implied warranties, breach of implied warranties as actionable under the MMWA, revocation of acceptance, breach of contract, rescission, and violations of the MCPA.

### A. Breach of Express Warranty and Breach of Express Warranty as Actionable under the MMWA

It is beyond dispute that Damon extended a 1–year or 12,000 mile express warranty to plaintiff. *See* Defendants' September

24, 2003 SJ Exhibit 4. Damon does not move for summary judgment of the state law breach of express warranty claim, or the federal MMWA claim premised on breach of express warranty. Damon is not entitled to summary judgment of plaintiff's claims of breach of express warranty under state law or the MMWA[7]. *Winningham,* 42 F.3d at 984.

*B. Contractual Privity and Claims of Breach of Implied Warranties, Revocation of Acceptance, Breach of Contract, and Rescission*

Plaintiff's claims of breach of implied warranties under state law and the MMWA, revocation of acceptance, breach of contract, and rescission as alleged against remote manufacturer Damon are necessarily premised on the legal proposition that an express written warranty constitutes a contract, and creates contractual privity between a buyer and a remote manufacturer. Plaintiff argues that Damon's express warranty constitutes a contract under Michigan law, citing *Great American Insurance Co. v. Paty's, Inc.,* 154 Mich.App. 634, 641, 397 N.W.2d 853 (1986). However, plaintiff also stipulates to the dismissal of his revocation of acceptance claim based on *Henderson v. Chrysler Corp.,* 191 Mich.App. 337, 341–342, 477 N.W.2d 505 (1991), holding that an action for revocation of acceptance under Michigan's version of the UCC, M.C.L. § 440.2608, is not available against a manufacturer lacking privity to the sales contract, even where the manufacturer extended separate written warranties to the buyer.

Revocation of acceptance under UCC § 2–608, M.C.L. § 440.2608; M.S.A. § 19.2608, is typically utilized against an immediate seller. This section allows a buyer to revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him. There is nothing to indicate that the Legislature intended the revocation of acceptance of a contract to apply to parties not in privity of contract. Acceptance under the UCC concerns the relationship between a buyer and a seller, M.C.L. § 440.2606; M.S.A. § 19.2606. Thus, revocation is inextricably connected to the contractual relationship between a buyer and a seller. This rationale includes the concept of contractual privity between the parties. On the basis of this statute's language and clear implication, we follow the opinions of a majority of other courts that have held that the remedy of revocation of acceptance is not available against a manufacturer.

This determination does not mean that a typical purchaser of a motor vehicle is left without a remedy. Recourse against manufacturers of new motor vehicles may be had through other Michigan statutes, M.C.L. § 257.1402; M.S.A. § 9.2705(2) provides that if a new motor vehicle has any defect or condition that impairs the use or value of the new vehicle, the manufacturer has a duty to repair the defect or condition. M.C.L. § 257.1403; M.S.A. § 9.2705(3) provides that if a reported defect or condition is not rectified after a reasonable number of repairs, a manufacturer has the option to either replace the new motor vehicle or accept return of the vehicle and refund the full purchase price. The existence of this statute obviates the need to stretch contractual privity in order to permit the use of the UCC

---

**7.** "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief ...." 15 U.S.C. § 2310(d)(1).

remedy of revocation of acceptance against a manufacturer.

*We disagree with the position taken in the dissenting opinion, which premises the extension of the availability of the remedy of revocation of acceptance on the existence of a manufacturer's warranty. We would find that, as a matter of policy, a manufacturer's warranty and a retail sales contract are not so closely linked in terms of subject matter and time of delivery that they constitute a single unit.* The fact that a manufacturer may be liable under its warranty provisions does not change the fundamental nature of the revocation remedy as being contractually based. *We would not expose a manufacturer to essentially contractual liabilities and remedies on the basis that they provide other protections in the form of warranties.* Actions against a manufacturer of a motor vehicle can be based on other specific state statutes. M.C.L. § 257.1401 *et seq.;* M.S.A. § 9.2705(1) *et seq.* Therefore, we would leave plaintiff with his cause of action and remedies under the warranty. The extension of a contractual obligation as set forth in the dissenting opinion could have widespread effect on a number of manufacturers in various fields. On the facts of the present case, we would not create such an extensive potential for liability. Thus, we hold that the privity requirement precludes seeking the UCC remedy of revocation of acceptance against a distant manufacturer.

*Henderson,* 191 Mich.App. at 341–343, 477 N.W.2d 505 (emphasis added) (internal citations omitted). Plaintiff relies, in the same manner as the dissenting opinion in *Henderson,* upon *Paty's, Inc.,* 154 Mich. App. at 641, 397 N.W.2d 853, to conclude that "a 'contractual relationship' can be said to exist between a remote manufacturer and a retail purchaser where, as here, the manufacturer extends an express warranty." *Id.* at 343–344, 477 N.W.2d 505 (dissenting opinion).

Consistent with the approach articulated in *Meridian Mutual Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999) for ascertaining state law where the state's highest court has not addressed an issue, this court has applied the decisional law of Michigan's Court of Appeals, such as *Henderson* and *Auto Owners v. Chrysler,* 129 Mich.App. 38, 341 N.W.2d 223 (1983), and the decisional law of other federal courts construing state law, such as *Mt. Holly Ski Area v. U.S. Electrical Motors,* 666 F.Supp. 115 (E.D.Mich.1987) (C.J.Pratt) and *Cameron v. American Dental Technologies, Inc.,* No. 94–CV–70860–DT, 1995 WL 599871 (E.D.Mich. 1995) (J. Friedman), and held that, in the case of a consumer (as opposed to a commercial purchaser), a consumer must prove contractual privity to prevail on a UCC implied warranty claim against a remote manufacturer, and an express warranty running from a remote manufacturer to a consumer does not create the requisite contractual privity. *Chaisson v. Winnebago Industries,* No. 01–CV–74809, (E.D.Mich. May 18, 2002) (unpublished). Based on the decision in *Mt. Holly Ski Area,* 666 F.Supp. at 120, the district court in *Watson v. Damon Corp.,* No. 1:02–CV–584, 2002 WL 32059736, at *5 (W.D.Mich. Dec. 12, 2002) likewise held that "in order for a plaintiff to recover economic losses on a breach of implied warranty theory under Michigan contract law, privity of contract must exist between the plaintiff and defendant." In both *Henderson* and *Watson,* the remote manufacturer extended separate written warranties to their respective buyers, and were found to lack contractual privity. *See Henderson,* 191 Mich.App. at 339, 343, 477 N.W.2d 505; *Watson,* 2002 WL 32059736, at *2, *6. Recently, the district court in *Michels v. Monaco Coach Corp.,* 298 F.Supp.2d 642,

649 (E.D.Mich.2003) (J. Duggan) held that contractual privity is not required under Michigan law to recover under a breach of implied warranty claim.

 This court remains persuaded by the reasoning in *Henderson, Auto Owners, Mt. Holly Ski Area, Cameron, Chaisson,* and *Watson, supra,* and the cases cited therein, that the Michigan Supreme Court, if faced with the issue, would rule that privity of contract is required for a consumer to recover under an implied warranty claim as alleged against a remote manufacturer, and that a manufacturer's express warranty does not create that requisite contractual privity. Ultimately, a split of authority will remain among the Michigan district courts until the issue is addressed by the Sixth Circuit or Michigan Supreme Court. Today, however, this court holds that an express warranty running directly from a manufacturer to a buyer does not create contractual privity, and that contractual privity is required in Michigan to support a claim of breach of implied warranty. Consequently, in the absence of contractual privity, plaintiff cannot prevail against defendant Damon pursuant to his claims of breach of implied warranties under state law and the MMWA, revocation of acceptance, breach of contract, and rescission[8], and Damon is entitled to summary judgment of these claims as a matter of law. *Winningham,* 42 F.3d at 984.

### C. Violations of the MCPA

Damon argues that plaintiff's MCPA claims should be dismissed for failure to plead the claims with the particularity required under Federal Rule of Civil Procedure 9(b) for pleading fraud. Damon re-lies on *Munem v. Best Buy Co.,* No. 224366, 2002 WL 43484 (Mich.Ct.App. Jan. 11, 2002) to support its position that all MCPA claims must be pleaded with particularity.

The MCPA provides in part:

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

\* \* \* \* \* \*

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

\* \* \* \* \* \*

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

\* \* \* \* \* \*

(o) Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

\* \* \* \* \* \*

(t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

(u) Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, repre-

---

**8.** "Rescission of a contract is an equitable remedy to be exercised in the sound discretion of the trial court." *Schmude Oil Co. v. Omar Operating Co., GHO,* 184 Mich.App. 574, 587, 458 N.W.2d 659 (1990). Plaintiff's claim of rescission seeks "rescission of the purchase and retail installment contract." Complaint, ¶ A, at 18. Damon is not in privity with these contracts.

sentation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the properly, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

\* \* \* \* \* \*

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

\* \* \* \* \* \*

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. . . . .

M.C.L. § 445.903(1)(c), (n-o), (t), (u), (y), (bb). Count VI of plaintiff's complaint incorporates this language in its MCPA allegations against both seller GRVC and manufacturer Damon. As an example, plaintiff alleges consistent with M.C.L. § 445.903(1)(bb) that:

The Manufacturer [Damon] and Seller [GRVC] have made representations of fact and/or statements of fact material to said transaction such that the Plaintiff reasonably believed that the represented or suggested standard, quality, characteristics, and uses of the 2002 Motor Home to be other than they actually are.

Complaint, ¶ 55(g), at 15.

As set forth in *McGregor v. Industrial Excess Landfill, Inc.*, 856 F.2d 39, 42 (6th Cir.1988):

. . . Federal Rule of Civil Procedure 8(a) requires that the plaintiff include "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As Professors Wright and Miller point out, implicit in the above-quoted passage from the *Conley* opinion "is the notion that the rules do contemplate a statement of circumstances, occurrences, and events in support of the claim being presented." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1215 (1969).

However, "the notice pleading requirement complements the liberal rules of civil discovery, relying on summary judgment motions 'to define disputed facts and issues and to dispose of unmeritorious claims.' In the case of a truly unclear complaint, the defendant can move for a more definite statement of the claim under Rule 12(e)." *Baxter v. Rose*, 305 F.3d 486, 490 (6th Cir.2002) (citing Fed.R.Civ.P. 12(e)) (internal citations omitted).

Damon does not dispute that a breach of warranty claim arising under the UCC constitutes a failure to provide a promised benefit under M.C.L. § 445.903(1)(y). *See Mikos v. Chrysler Corp.*, 158 Mich.App. 781, 784–785, 404 N.W.2d 783 (1987) (holding that breach of an implied warranty under the UCC is actionable under M.C.L. § 445.903(1)(y) even though the promise was not made directly by the warrantor). Plaintiff's complaint adequately alleges the circumstances and events underlying the breach of express warranty claim against Damon. *McGregor*, 856 F.2d at 42. The court does not read the breach of express warranty claim nor resulting MCPA claim as alleging fraud.

 The court is not persuaded that plaintiff's remaining MCPA claims should be dismissed at this early stage of the lawsuit. *Munem*, 2002 WL 43484 at \*1, is

not controlling in this court to the extent it holds that Michigan procedure, particularly M.C.R. 2.112(B)(1), requires MCPA claims to be plead with particularity. *See Smith v. Peters*, 482 F.2d 799, 801 (6th Cir.1973) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) for the proposition that purely procedural issues unrelated to the substantive merits of a case are decided by a federal district judge under federal law). Damon recognizes as much in relying on Federal Rule of Procedure 9. Further, the *Munem* court reversed the Michigan trial court's dismissal of the MCPA claims after reviewing the totality of the complaint's allegations regarding the defrauding of customers through rebate advertisements. *Id*, at *1.

The court is concerned, however, with the lack of alleged circumstances, occurrences, and events underlying plaintiff's MCPA claims other than the M.C.L. § 445.903(1)(y) claim premised on Damon's alleged breach of express warranty. *McGregor*, 856 F.2d at 42. Count VI alleges that both GRVC and Damon: misrepresented certain aspects of the subject motor home and "the warranty"; failed to clearly state the terms of a possible waiver of rights; failed to restore plaintiff's payments made on the vehicle, and; "made gross discrepancies" between their oral and written statements. Complaint, ¶ 55(a-g), at 15. At best, it is unclear whether plaintiff is seeking to hold Damon liable for GRVC's conduct, and if not, the conduct of Damon that allegedly violated the MCPA. Neither plaintiff's complaint nor the proffered evidence attempts to show that Damon was present at the sale or at the execution of the retail installment contract, making it equally unclear when Damon allegedly "made gross discrepancies" with oral statements. Nonetheless, the appropriate remedy is not dismissal, but permitting plaintiff to amend his MCPA claims if warranted by discovery.

*Baxter*, 305 F.3d at 490. Damon, of course, may move for a more definitive statement, or for summary judgment of the MCPA claims at the close of discovery. *Id.* Damon is not, at this time, entitled to summary judgment of plaintiff's MCPA claims. *Id; Winningham*, 42 F.3d at 984.

## VI. Conclusion

Defendant GRVC's motion to compel arbitration is hereby GRANTED. GRVC is hereby DISMISSED from this lawsuit. Defendant Damon's motion to compel arbitration is hereby DENIED. Defendant GRVC's motion for summary judgment is hereby DENIED as MOOT upon being compelled to pursue arbitration. Defendant Damon's motion for summary judgment is hereby GRANTED, IN PART, as to plaintiff's state and MMWA claims of breach of implied warranties, revocation of acceptance, breach of contract, and rescission as alleged against Damon ONLY in Counts II, III, V, VII, and VIII. The remainder of Damon's motion for summary judgment is hereby DENIED as to plaintiff's state and MMWA claims of breach of an express warranty, and violations of the MCPA as alleged against Damon ONLY in Counts I, IV and VI. Plaintiff's claims as alleged in Counts II, III, V, VII, and VIII as against Damon ONLY are hereby DISMISSED with prejudice. The parties shall proceed accordingly on the remaining claims against defendant Damon of breach of express warranties arising under M.C.L. 440.2313 (Count I), breach of express warranty actionable under 15 U.S.C. § 2310(d)(1) and (2) of the MMWA (Count IV), and violations of the MCPA (Count VI).

SO ORDERED.